# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| TOMMY JACK SURBER, | )<br>) |
| Plaintiff, | ) Case No. 1:13CV00046<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | ) By: James P. Jones<br>) United States District Judge<br>)<br>) |
| Defendant. | ) |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Nora Koch, Acting Regional Chief Counsel, Region III, Jillian Quick, Assistant Regional Counsel, and Allyson Jozwik, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the decision of the Commissioner.

I

Plaintiff Tommy Jack Surber filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income benefits ("SSI") under Title XVI of the Social

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

Security Act ("Act"), 42 U.S.C.A. §§ 1381-1383f (West 2012 & Supp. 2013). Jurisdiction of this court exists under 42 U.S.C.A. § 1383(c)(3).

Surber filed for SSI administratively on June 25, 2009. After preliminary denials of his claims, he obtained a hearing before an administrative law judge ("ALJ") on April 2, 2012, at which he was represented by counsel and during which he testified along with an impartial vocational expert, A. Bentley Hankins.[2] On April 16, 2012, the ALJ issued a written decision finding that Surber was not disabled under the Act. Surber requested review by the Social Security Administration's Appeals Council. The Appeals Council denied his request for review on April 19, 2013, thus making the ALJ's decision the final decision of the Commissioner. Surber then filed this action on May 31, 2013, seeking judicial review of the Commissioner's final decision.

The parties filed cross motions for summary judgment, which were briefed and thereafter orally argued by counsel on December 19, 2013. The case is now ripe for decision.

---

[2] There was an earlier hearing, but because of technical difficulties, a transcript of the recorded hearing could not be produced, so that the hearing was repeated on April 2. (R. 66, 210.)

II

At the time of the alleged onset date of disability, Surber was 51 years old. He has a high school education and previously worked as a self-employed carpenter. Surber claimed that he had been unable to work since September 15, 2007. In his written decision, the ALJ found that Surber had the following severe impairments: "hearing loss; degenerative joint disease/degenerative disk disease of the cervical and lumbar spine; arthralgias [non-inflammatory joint pain]; left calf pain; history of marijuana abuse; and depression." (R. 50.) The ALJ reviewed Surber's medical history and the evidence presented at the hearing and set forth the reasons for his factual findings. He found that Surber did not have an impairment or combination of impairments that met or medically equaled a listed impairment, had no past relevant work, and that he had the residual functional capacity to perform medium excertional work, with appropriate limitations in accord with his recognized impairments. Based upon the testimony of the vocational expert, the ALJ determined that Surber was capable of performing jobs existing in significant numbers in the national economy.

It is contended in the present case that the ALJ erred by (1) rejecting certain opinions of Ralph Ramsden, Ph.D., a clinical psychologist who assessed Surber at the request of his attorney; (2) failing to include Surber's mental impairment in his

hypothetical question to the vocational expert; and (3) failing to evaluate all of Surber's impairments in combination.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the ALJ applies a five-step sequential evaluation process. The ALJ considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2013). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands

of other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv), (v).

In accordance with the Act, I must uphold the ALJ's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of the court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

I have carefully reviewed the record evidence and conclude that the ALJ's decision in this case is supported by substantial evidence and was reached through application of the correct legal standard.

### DR. RAMSDEN'S OPINIONS.

The plaintiff contends that the ALJ did not adequately consider the opinions of Dr. Ramsden, who interviewed Surber on November 16, 2011, and administered

two tests, the Miller Functional Assessment of Skills Test ("M-FAST") and the Minnesota Multiphasic Personality Inventory-Second Edition, Restructured Form ("MMPI-2 RF"). Dr. Ramsden found that the MMPI-2 RF test results were "invalid" because the results "suggested over-reporting of clinical symptoms." (R. 559-60.) On the other hand, the M-FAST test results "provided an honest self-description" of depression. (R. 559.) Dr. Ramsden concluded that Surber "provided mixed information regarding the possibility of exaggerating and malingering clinical concerns." (R. 560.)

Surber gave Dr. Ramsden a history of depression and anxiety dating to childhood verbal and physical abuse by his father. (R. 560.) Dr. Ramsden was of the opinion that Surber suffered from "Major Depressive Disorder, Recurrent and Severe without Psychotic Features" as well as "Post-Traumatic Stress Disorder, Chronic." (R. 561.)

In addition to a narrative report, Dr. Ramsden also completed a checkbox form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)." In it, he indicated that Surber had poor or no ability to behave in an emotionally stable manner or relate predictably in social situations. (R. 564.) The ALJ reported that he gave "[v]ery little weight" to this assessment, based upon Dr. Ramsden's suggestion of possible malingering as well as reports that Surber

related well to health care providers and had unremarkable mental capacity.[3] (R. 55.)

Surber complains that the ALJ also relied upon the fact that Dr. Ramsden had been hired by Surber's attorney in rejecting his assessment, although he did not apply a similar rationale when he accepted the opinions of William Humphries, M.D., a physician who evaluated Surber's physical complaints as a medical consultant for the Virginia Department of Rehabilitative Services.[4]

While it would have been error for the ALJ to have rejected Dr. Ramsden's opinion simply because he had been hired and paid on behalf of the plaintiff, it is clear that in this case there were other valid reasons, fully explained in the ALJ's decision, why he did not accept Dr. Ramsden's assessment.

The ALJ considered the evidence as a whole in making his determination and while the evidence could have been resolved differently, I find that the ALJ's decision not to fully accept Dr. Ramsden's opinions was supported by substantial evidence.

---

[3] Dr. Ramsden reported that Surber participated actively in the examination, "responding to all questions presented" and "presented as a respectful and cooperative individual." (R. 554, 560.) He also reported that Surber had "at least Low Average intellectual abilities." (R. 554.)

[4] The ALJ stated in relation to Dr. Ramsden, "Further, this assessment was instigated by claimant's attorney in an effort to generate evidence for the current appeal. Presumably, Dr. Ramsden was paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored." (R. 55.) As Surber points out (Br. in Supp. of Mot. for Summ. J. 8), Dr. Humphries was also presumably paid for his services.

HYPOTHETICAL TO VOCATIONAL EXPERT.

Surber contends that the ALJ erred in failing to include Surber's mental impairment in his hypothetical question posed to the vocational expert. However, I agree with the Commissioner that the hypothetical was sufficient, in that it included the stipulation that Surber's work must be limited to "simple, routine and repetitive unskilled tasks, with no more than occasional interaction with the public." (R. 77-78.) The ALJ was correct in including functional work-related limitations, rather than a diagnostic label, such as depressive disorder. *See* SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996) ("As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions.").

COMBINED EFFECT OF IMPAIRMENTS.

The plaintiff contends that the ALJ failed to consider the combined effect of his impairments, as required by the regulations. 20 C.F.R. § 416.923 (2103). However, the ALJ did accept that Surber had a number of severe impairments and numerated these impairments in his hypothetical question to the vocational expert. The vocation expert opined that even with these limitations, the plaintiff had the residual functional capacity to perform work that existed in significant numbers in the national economy. The ALJ did not err in accepting that opinion and finding the plaintiff not disabled.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment is denied, and the defendant's Motion for Summary Judgment is granted. A separate judgment will be entered affirming the Commissioner's final decision denying benefits.

It is so **ORDERED**.

ENTER: January 6, 2014

/s/ James P. Jones
United States District Judge